UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHANNON VERONESI,

    Plaintiff,                                        CASE NO.: 22-cv-000497

vs.

FLORIDA SHERIFFS YOUTH RANCHES, INC.,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SHANNON VERONESI, (hereinafter "Plaintiff" or "Ms. Veronesi"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, FLORIDA SHERIFFS YOUTH RANCHES, INC., (hereinafter "Defendant" or "FSYR"), and alleges:

**JURISDICTION AND VENUE**

1. This is an action for damages under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and the Florida Civil Rights Act ("FCRA") for discrimination based on gender and retaliation.

2. This Court has jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. §§ 1331.

3. This Court has jurisdiction over Plaintiff's FCRA claims under 28 U.S.C. § 1367 as all claims arise out of the same nexus of operative facts.

4. Venue is appropriate in the Middle District of Florida because the events giving rise to the cause of action occurred in Pinellas County, Florida, which is located in the Middle District of Florida.

5. For this reason, the Tampa Division is the proper division.

## PARTIES

6. The plaintiff, SHANNON VERONESI, is a resident of Pinellas County, Florida.

7. The defendant, FLORIDA SHERIFFS YOUTH RANCHES, INC., is a Not-For-Profit Corporation principally located at 2786 Cecil Webb Place, Live Oak, Florida 32060.

8. During the time of these allegations, Plaintiff worked at Florida Sheriffs Youth Ranches Safety Harbor Campus, located at 3180 Enterprise Road E, Safety Harbor, Florida 34695-5205, in Pinellas County.

## ADMINISTRATIVE PREREQUISITES

9. Ms. Veronesi has satisfied all prerequisites necessary to bring this cause of action. Plaintiff filed a charge jointly with the EEOC and the Florida Commission on Human Relations (FCHR). Plaintiff did not receive a determination after 180 days and requested a right to sue letter from the EEOC, which she received. Plaintiff filed this action before the expiration of any deadlines to file suit.

## GENERAL ALLEGATIONS

10. On October 30, 2017, FSYR hired Ms. Veronesi to serve as the Program Director of the Safety Harbor Campus.

11. As Program Director Ms. Veronesi reported directly to Charles Deitch., the VP of Residential Programs. FSYR required Ms. Veronesi to live in a home on the Safety Harbor Campus as a condition of holding the Program Director position. Ms. Veronesi happily moved her family into the home on Safety Harbor Campus upon becoming program director.

12. When Ms. Veronesi first started with FSYR, she was one of four Program Directors working for the FSYR at four different campus locations. Two of the Directors were male and she and another were female.

2

13. In August 2019, the other female Director, Robin Sumner, resigned her position due to the discrimination and hostile work environment she faced because she was female.

14. FSYR replaced Ms. Sumner with a man named Tom Pichette. Mr. Pichette did not have a Masters' degree and was not qualified to serve as a Program Director.

15. Eventually, FSYR replaced Mr. Pichette with a man named Ron Serpliss.

16. In early 2020, the Florida Legislature enacted a new law that dramatically reduced the enrollment on all FSYR campuses. This created a crisis for FSYR because the drop in enrollment meant a dramatic decrease in funding.

17. In February 2020 Charles Deitch met with Ms. Veronesi and the two remaining male Program Directors to tell them to come up with a plan "to keep the doors open" at their various campuses.

18. In April 2020, Ms. Veronesi gave a presentation to the Department Heads about how FSYR Safety Harbor could solve the looming budget crisis by replicating a comprehensive foster care program – Restoration Rome, in Georgia. Restoration Rome had implemented this type of programming to avoid a looming revenue crisis. Ms. Veronesi explained that the FSYR Safety Harbor campus could solve its budget crisis by changing its operations to provide services for foster care families and to change the foster care operation from a single group home (which the state would not pay for under the new law) to individual foster care homes, to allow continued placement of foster care children.

19. After this meeting, Mr. Deitch told Ms. Veronesi to prepare an official budget and detailed plan as to how to carryout the ideas she had proposed in her meeting with the Department Heads. Mr. Deitch told her that she would be asked to present the new budget to the Department Heads on July 15, 2020.

20. Following the directive to prepare a formal budget to execute the new plan, Ms. Veronesi contacted Restoration Rome to ask for an opportunity to sit down with their director and learn more about the program, its funding sources and budget development, and to ultimately avoid a financial crisis at FSYR. The Director of Restoration Rome proposed that she come to their campus and see first-hand what they had done and offered to go through the budget line by line to help her see how they had addressed the issue.

21. In May 2020, Ms. Veronesi began planning her visit to Restoration Rome. Unfortunately, the meeting could not be set until June 2020 due to the state of COVID outbreaks in both Georgia and Florida and the strict quarantine guidelines in place on both campuses. In late June 2020, Restoration Rome and Ms. Veronesi agreed that she could come to Restoration Rome on July 17, 2020 if she was negative for covid.

22. Ms. Veronesi informed Mr. Deitch that she would not be able to visit the Restoration Rome campus until July 17, 2020 and he assured her that this would be alright. He explained she only needed a basic budget to show how her ideas would address the revenue problem.

23. On July 15, 2020, Jeff Fletcher, Ron Serpliss and Ms. Veronesi each gave a presentation about their proposed programming and budget plans for solving the revenue crisis at their respective campuses. It turned out Mr. Fletcher had met with Mr. Frye for six hours in advance of this meeting and the two had prepared a cursory budget together for the main campus in Live Oak, Florida. Mr. Frye accepted his presentation as it simply reiterated his own ideas without scrutiny. Mr. Serpliss gave the same presentation he had made in April without any additional details. Ms. Veronesi provided a skeleton budget of her plans for Safety Harbor and

explained that most of the details for her presentation would be supplemented after she met with the leadership of Restoration Rome over the next few days.

24. Following the presentations Mr. Frye and Maria Knapp both criticized Ms. Veronesi and said she didn't have the heart or commitment to the Ranch. Mr. Frye asked her what her skin in the game was.

25. Mr. Deitch did not explain to Mr. Frye or Ms. Knapp that he had instructed Ms. Veronesi to give a limited presentation that she could supplement after she visited Restoration Rome.

26. Immediately after the meeting, Ms. Veronesi drove directly to Restoration Rome and spent an additional eight hours the next day with the founders to learn everything she could about how they had changed their campus to provide foster care services to foster homes rather than provide a foster care home.

27. While she was in Rome Georgia, Ms. Veronesi sent an email to Mr. Deitch asking to meet with him to discuss the Department Head meeting, but he never made time to meet with her to discuss her concerns.

28. One week after her visit to Restoration Rome, Ms. Veronesi prepared a detailed budget for her plan to transition FSYR Safety Harbor to this new model of providing services to foster families and creating individual foster homes. She sent that plan to Bill Frye and copied Charles Deitch on the plan.

29. At the same time Ms. Veronesi requested a face-to-face meeting with Mr. Deitch, Teresa Didriksen contracted covid and took covid leave. Ms. Veronesi spoke with Ms. Didriksen and came up with a plan that she agreed to about when she would be cleared to return to work. Following the creation of this plan, Mr. Deitch decided on his own that Ms. Didriksen should not

return for another week in light of her husband's illness. Ms. Veronesi then expressed her frustration that she had followed all of the covid protocols only to have him change the plan without her input. Mr. Deitch then responded to Ms. Veronesi's email by making several false allegations and questioning her complaints and indicating that if she continued to complain he would terminate her.

30. Following Mr. Deitch's response to her emails, Ms. Veronesi enacted the FSYR Open Door Policy and requested a meeting with Bill Frye and Christine Dodd, Director of Human Resources, to discuss Mr. Deitch's treatment of her. At this meeting Ms. Veronesi told them that Mr. Deitch treated her differently than the other Directors and created a hostile work environment because she was a woman.

31. Following this meeting, Mr. Deitch continued to treat Ms. Veronesi differently from her male counterparts and retaliated against her by making false statements in her annual performance review. He falsely claimed in her review that employees had accused her of bullying, but this was not true.

32. On March 5, 2021, Mr. Deitch terminated Ms. Veronesi for a pretextual reason. He stated that he believed Ms. Veronesi had taken children out of a local public school and placed them in a private school without his knowledge. This was patently untrue and could have been cleared up with a simple phone call.

33. Though Mr. Deitch could have cleared up any legitimate misunderstanding with a simple call to Ms. Veronesi, he chose to fire her because he was principally focused on finding a pretext to terminate her.

34. Mr. Dietch terminated Ms. Veronesi because of her gender and in retaliation for her complaints to Human Resources and FSYR leadership about his continued gender discrimination.

35. After terminating Ms. Veronesi, Mr. Deitch attempted to have her, her husband and their two young children evicted from her home on the same day. Two Deputies from the Pinellas County Sheriff's Office came to her home but determined quickly that there was no permissible basis for eviction without providing 30 days' notice as required by law and the FSYR contract that Ms. Veronesi signed upon beginning her employment with FSYR.

36. Plaintiff has incurred costs and attorney's fees in bringing this action.

## COUNT I

**VIOLATIONS OF TITLE VII**
**Gender Discrimination**

37. Plaintiff, SHANNON VERONESI, re-alleges and incorporates the paragraphs set forth above as if set forth herein in full.

38. The Defendant employed more than 15 or more individuals for each of the 20 weeks preceding the events described herein and is therefore an "employer" as defined in Title VII.

39. Veronesi was an employee of Defendant as defined in Title VII.

40. Veronesi is in a protected class as established by Title VII by virtue of her gender, female.

41. Veronesi was qualified to perform her job duties with the Defendant.

42. The Defendant took adverse employment action against Veronesi, terminating her employment.

43. Veronesi's gender (female) was a motivating factor for Defendant's adverse employment action.

44. As a direct and proximate result of Defendant's actions, Veronesi has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional

and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

45. By virtue of the actions described herein, Defendant has violated Title VII.

46. Defendant is well aware of the protections afforded to women from discrimination under Title VII and therefore its actions were reckless, willful and/or malicious.

47. Veronesi's losses are permanent and continuing as she will continue to suffer losses as a result of Defendant's actions for the indefinite future.

**WHEREFORE**, Plaintiff, SHANNON VERONESI, demands entry of a Final Judgment against Defendant, FLORIDA SHERIFFS YOUTH RANCHES, for the following:

A. A direction to Defendant to make Plaintiff whole by providing her with back pay damages;

B. A direction to Defendant to reinstate Plaintiff or, if that is not feasible, an award for front pay damages;

C. A direction to Defendant to make Plaintiff whole by providing her with Compensatory Damages for the mental anguish, loss of enjoyment of life, and humiliation caused by the hostile work environment and termination;

D. Prejudgment interest on any amount awarded;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

## COUNT II

### VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT
### Gender Discrimination

48. Plaintiff, SHANNON VERONESI, re-alleges and incorporates the allegations set forth in paragraphs 1-36 above as if set forth herein in full.

49. The Defendant employed more than 15 or more individuals for each of the 20 weeks preceding the events described herein and is therefore an "employer" as defined in the Florida Civil Rights Act of 1992 ("FCRA").

50. Veronesi was an employee of Defendant as defined in the FCRA.

51. Veronesi is in a protected class as established by the FCRA, by virtue of her gender, female.

52. Veronesi was qualified to perform her job duties with the Defendant.

53. The Defendant took adverse employment action against Veronesi, terminating her employment.

54. Veronesi's gender (female) was a motivating factor for Defendant's adverse employment action.

55. As a direct and proximate result of Defendant's actions, Veronesi has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

56. By virtue of the actions described herein, Defendant has violated the FCRA.

57. Defendant is well aware of the protections afforded to women from discrimination under the FCRA and therefore its actions were reckless, willful and/or malicious.

58. Veronesi's losses are permanent and continuing as she will continue to suffer losses as a result of Defendant's actions for the indefinite future.

**WHEREFORE**, Plaintiff, SHANNON VERONESI, demands entry of a Final Judgment against Defendant, FLORIDA SHERIFFS YOUTH RANCHES, for the following:

A. A direction to Defendant to make Plaintiff whole by providing her with back pay damages;

B. A direction to Defendant to reinstate Plaintiff or, if that is not feasible, an award for front pay damages;

C. A direction to Defendant to make Plaintiff whole by providing her with Compensatory Damages for the mental anguish, loss of enjoyment of life, and humiliation caused by the hostile work environment and termination;

D. Prejudgment interest on any amount awarded;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

## COUNT III

### VIOLATIONS OF TITLE VII
### Retaliation

59. Plaintiff, SHANNON VERONESI, re-alleges and incorporates the allegations set forth in paragraphs 1-36 above as if set forth herein in full.

60. The Defendant employed more than 15 or more individuals for each of the 20 weeks preceding the events described herein and is therefore an "employer" as defined in Title VII.

61. Veronesi was an employee of Defendant as defined in Title VII.

62. Veronesi is in a protected class as established by Title VII by virtue of her gender, female.

63. Veronesi was qualified to perform her job duties with the Defendant.

64. Veronesi engaged in a protected activity when she reported Charles Deitch's gender discrimination to the Human Resources Director and the President of FSYR.

65. The Defendant took adverse employment action against Veronesi, terminating her employment because of her engagement in a protected activity.

66. As a direct and proximate result of Defendant's actions, Veronesi has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

67. By virtue of the actions described herein, Defendant has violated Title VII.

68. Defendant is well aware of the protections afforded to women from discrimination and retaliation under Title VII and therefore its actions were reckless, willful and/or malicious.

69. Veronesi's losses are permanent and continuing as she will continue to suffer losses as a result of Defendant's actions for the indefinite future.

**WHEREFORE**, Plaintiff, SHANNON VERONESI, demands entry of a Final Judgment against Defendant, FLORIDA SHERIFFS YOUTH RANCHES, for the following:

A. A direction to Defendant to make Plaintiff whole by providing her with back pay damages;

B. A direction to Defendant to reinstate Plaintiff or, if that is not feasible, an award for front pay damages;

C. A direction to Defendant to make Plaintiff whole by providing her with Compensatory Damages for the mental anguish, loss of enjoyment of life, and humiliation caused by the hostile work environment and termination;

D. Prejudgment interest on any amount awarded;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

## COUNT IV

### VIOLATIONS OF THE FLORIDA CIVIL RIGHTS ACT
### Retaliation

70. Plaintiff, SHANNON VERONESI, re-alleges and incorporates the allegations set forth in paragraphs 1-36 above as if set forth herein in full.

71. The Defendant employed more than 15 or more individuals for each of the 20 weeks preceding the events described herein and is therefore an "employer" as defined in the FCRA.

72. Veronesi was an employee of Defendant as defined in the FCRA.

73. Veronesi is in a protected class as established by the FCRA by virtue of her gender, female.

74. Veronesi was qualified to perform her job duties with the Defendant.

75. Veronesi engaged in a protected activity when she reported Charles Deitch's gender discrimination to the Human Resources Director and the President of FSYR.

76. The Defendant took adverse employment action against Veronesi, terminating her employment because of her engagement in a protected activity.

77. As a direct and proximate result of Defendant's actions, Veronesi has suffered damages, including, but not limited to, past, present and future lost wages and benefits, emotional and mental anguish, loss of the capacity for the enjoyment of life, and other compensatory damages.

78. By virtue of the actions described herein, Defendant has violated the FCRA.

79. Defendant is well aware of the protections afforded to women from discrimination and retaliation under the FCRA and therefore its actions were reckless, willful and/or malicious.

80. Veronesi's losses are permanent and continuing as she will continue to suffer losses as a result of Defendant's actions for the indefinite future.

**WHEREFORE**, Plaintiff, SHANNON VERONESI, demands entry of a Final Judgment against Defendant, FLORIDA SHERIFFS YOUTH RANCHES, for the following:

A. A direction to Defendant to make Plaintiff whole by providing her with back pay damages;

B. A direction to Defendant to reinstate Plaintiff or, if that is not feasible, an award for front pay damages;

C. A direction to Defendant to make Plaintiff whole by providing her with Compensatory Damages for the mental anguish, loss of enjoyment of life, and humiliation caused by the hostile work environment and termination;

D. Prejudgment interest on any amount awarded;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Dates this 2nd day of March 2022.

/s/ Gary L Printy, Jr, Esq
**Gary L. Printy, Jr**
Florida Bar No. 41956
**PRINTY & PRINTY, P.A.**
3411 W. Fletcher Ave., Suite A
Tampa, Florida 33618
Telephone (813) 434-0649
FAX (813) 423-6543
garyjr@printylawfirm.com
e-service@printylawfirm.com
*Attorney for Plaintiff*
SHANNON VERONESI